A. J. Harris and Julian Harris, both of Decatur, for appellee.

143 So. 837

## HOME INS. CO. v. PETTIT.
### 8 Div. 455.

Court of Appeals of Alabama.
March 29, 1932.

Rehearing Denied May 17, 1932.

Reversed on Mandate Nov. 1, 1932.

RICE, J.

Appellee, plaintiff in the court below, had recovery in his suit against appellant, on an automobile theft insurance policy—to so denominate it.

There is no dispute but that appellee owned an automobile, which was stolen; but that appellant had duly issued a policy of insurance covering such loss by appellee, provided said loss was not excepted, by the clause of the policy to be hereinafter, shortly, quoted; but that all preliminary prerequisites to maintaining the suit had been complied with, etc.

Upon the conclusion of the testimony offered on behalf of appellee—none being offered on behalf of appellant—the trial court gave the duly requested general affirmative

charge to find in behalf of appellee, leaving the amount of the recovery to be fixed by the jury.

There is no question raised as to the pleadings in the case; no question, *worthy of mention*, as to rulings on the taking of testimony.

The only questions are whether it was proper to give the said general affirmative charge to find in favor of appellee; and to refuse to give the duly requested general affirmative charge to find in favor of appellant.

Answering either of said questions will answer the other. And the answer to both hinges upon the construction of the following clause of the policy sued upon, describing the perils indemnified against, to wit: "Theft, * * * *excepting by any person or persons in the assured's household*, or in the assured's service or employment," etc. (Italics ours.)

The undisputed testimony showed that appellee (assured) was in business for himself; that he spent a part of his time—"over week ends"—with his father, at his father's home; that said father owned the said home, residing there with his family; that appellee was a salesman, and that that occupation required his traveling around; that the automobile, at the time it was stolen, was kept by appellee, locked, etc., in a garage about 75 yards from where appellee was staying, at the home of his father; that upon the occasion of the theft of the car it was stolen by an uncle of appellee, who was temporarily in the home of appellee's father, as a guest of the family, sleeping at nights, in the room with appellee; that appellee, in addition to his business as a salesman, was, at the time in question, engaged in the business of farming, there at his father's home, in association with his father; that appellee did not invite said uncle into the said home, and, for aught appearing, had no authority to ask him to leave.

Was the uncle, referred to above, a person "in the assured's household," in the sense contemplated by the quoted portion of the policy?

"Household" is defined, pertinently, by Webster's New International Dictionary as: "Those who dwell under the same roof and compose a family; a domestic establishment; family."

Appellant's able, industrious, and resourceful counsel go back and begin at the eighteenth chapter of Genesis to furnish us numerous citations from Holy Writ, in an effort to bolster up his contention that the uncle, described hereinabove, was a "person in the assured's household," making the theft by him of assured's car a loss not insured against by appellant. But we are not persuaded.

In the very first citation, forming the bedrock of the argument built by the said appellant's ingenious counsel (Gen. 18:19), where the Lord is quoted as having said of Abraham: " * * * I know him, that he will command his children, *and his household after him*," etc. (italics ours), the idea of proprietorship or headship is readily and obviously apparent. And so of every single one of the citations from the Scriptures so painstakingly ferreted out by the said counsel.

We may well quote a paragraph from the excellent brief of appellee's, likewise, able and ingenious counsel, to wit (after listing the fruits of appellant's biblical researches, in the form of setting out, one after the other, several of its counsel's "sacred citations"): "In each instance, as appellant argues, we are taught that 'household' comprehends those living together; *but also in each instance it is the household of the person who has charge of, dominion over, and control of it*." (Italics his and ours.)

We do not believe we would go so far as to hold that no one could be a member of an assured's "household" unless that assured was the "head of the house," though such an holding would not seem to be a strained one; but we are clear to the view that one, to be a "person in the assured's household," where the assured is *not* the "head of the house," in the sense contemplated in the clause of the policy quoted, must be *permanently*, i. e., as contradistinguished from a mere transient, temporary, lodger, or guest, at the same lodging place, a part of the family of which said assured is a member.

The very fact that we find ourselves in doubt, is sufficient reason for our holding that the quoted clause of the policy does not exempt appellant from the payment of the loss shown to have been suffered in this case. For, "where the provisions of a policy of indemnity are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured, and the other favorable to the assurer, that will be adopted which is favorable to the assured." Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 430, 24 A. L. R. 734.

The holding of the Maryland Court of Appeals in the case of Herbert W. Rydstrom v. Queen Ins. Co. of Amer., 137 Md. 349, 112 A. 586, 14 A. L. R. 212, which case has been cited to us by both appellant and appellee, and which, so far as we have been able to ascertain, is the only adjudicated case bearing directly upon the questions we are trying to answer, does not really help us.

In that case it was held that "theft of an automobile by the nephew of the owner, who is temporarily visiting him, is within the exception of a policy insuring the automobile from theft excepting by any person in the assured's household." There there was no question but that said nephew was a person in "assured's household," because *assured was the head of the house*.

236

Construed in the light of the copious quotations from Holy Writ, spread before us by counsel, and in accordance with the rule laid down by the Supreme Court in the case of Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., supra, by which we are bound (Code 1923, § 7318), we are of the opinion that, under the undisputed evidence in this case, the quoted clause of the policy of insurance, above, did *not* exempt appellant from the liability to pay the loss shown in this case.

The judgment of the lower court is affirmed.

Affirmed.

PER CURIAM.

Reversed and remanded on authority of Home Ins. Co. v. Pettit (8 Div. 420) 225 Ala. 487, 143 So. 839.